**In re Dominic ANDOH, and Rejoice Dufie Kyei, Debtors.**

**No. 07–12003–SBB.**

United States Bankruptcy Court, D. Colorado.

June 8, 2007.

378

Anne DeWitt, The Law Office of Sharon Grossenbach, Denver, CO, for Debtors.

David Wadsworth, Sender & Wasserman, P.C., Denver, CO, for Creditor.

## MEMORANDUM OPINION AND ORDER CONFIRMING AMENDED CHAPTER 13 PLAN AND OVERRULING OBJECTION TO CONFIRMATION

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on May 16, 2007, regarding confirmation of Debtor's Chapter 13 Plan filed on March 8, 2007 (Docket # 2) and the Objection of Onyx Acceptance Corporation ("Creditor") filed on April 17, 2007 (Docket # 16). The Court, having (1) reviewed the file, including the Debtor's Schedules and Statement of Financial Affairs, the initial Chapter 13 Plan, the Objection thereto, and the Amended Chapter 13 Plan, (2) heard argument of counsel, (3) considered the testimony of Dominic Andoh ("Mr.Andoh"), and (4) received exhibits during the evidentiary hearing, makes the following findings of fact, conclusions of law and Order.

### I. *Preliminary Statement*

The issue before the Court reflects and important change under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and it is without published precedent in this Circuit. It involves whether or not individual debtors who purchases a new vehicle within 910 days before they filed their bankruptcy petition can "cram down" the vehicle in their Chapter 13 Plan because, contrary to the title or other indicia of ownership, it was for business—not personal—use. Based on the evidence at trial, the Court concluded that, despite the fact that the Certificate of Title was in the debtors' names, personally, and the language contained in the purchase documentation, the vehicle was for business, not personal, use and thus the debt could be "crammed down" on the Creditor.

### II. *Summary of the Arguments and Conclusions*

At the time of filing their bankruptcy case, Mr. Andoh and his wife, Rejoice Dufie ("Debtors"), owned a 2005 Lincoln Town Car ("Automobile"). The vehicle was subject to a loan and security interest held by the Creditor. On the date of filing, the Debtors owed Creditor $31,257.33, plus accruing interest at the rate of 12.95% per annum, attorney fees and costs. The Debtors' original Chapter 13 Plan provided for a payment to the Creditor in the amount of $31,915.00 at 0.0% interest. Creditor asserted that the Debtor's Chapter 13 Plan must provide for the payment of Creditor's claim under the contract because the collateral for the debt consisted of a motor vehicle and it was acquired within 910 days prepetition for the personal use of the Debtor. Consequently, Creditor argued, the claim was impermissibly being "crammed down" in contravention of 11 U.S.C. § 1325(a)(5), the so-called "hanging paragraph" which prohibits automobile "cram down" on a vehicle purchased with 910 days preceding the filing of the bankruptcy case. The initial Chapter 13 Plan was amended subsequently to address the Chapter 13 Trustee's Objections thereto. The treatment of Creditor was altered by the Amended

Chapter 13 Plan to provide a replacement value of the collateral of $17,425.00, with interest thereon at 10.25% for a total amount payable through the Chapter 13 Plan of $19,907.00.

The Court conducted an evidentiary hearing regarding this matter on May 16, 2007. The Court concluded that the Automobile was not acquired for the personal use of the Debtor because the vehicle was used for the Debtors' limousine service and, therefore, the debt could be "crammed down" and the Debtors' Amended Chapter 13 Plan would be confirmed consistent with 11 U.S.C. § 1325(a)(3), (5) and the "hanging paragraph" at the end of 11 U.S.C. § 1325(a)(5).

## III. *Background*

On October 1, 2005, the Debtors entered into a Retail Installment Sale Contract ("Agreement") with Price Lincoln Mercury to finance their purchase of the Automobile. Under the terms of the Agreement, the Debtors financed the amount of $35,625.78, at an annual percentage rate of 12.95%. On the Agreement, the parties thereto[1] placed an "XX" on the box indicating that the Automobile was purchased for the primary use of "personal, family, or household."[2]

To secure the Debtors' obligation on the Automobile, the Debtors granted Creditor a security interest in the Automobile. Creditor perfected the security interest by recording its lien on the title of the Automobile with the Colorado Division of Motor Vehicles.[3]

Debtors filed for relief under Chapter 13 of the Bankruptcy Code on March 8, 2007. At the time of filing, the Debtors owed Creditor the total amount of $31,257.33, plus accruing interest, attorney fees and costs, which are now due and owing. The Debtors' Chapter 13 Plan, also filed March 8, 2007, provided for payment to Creditor in the amount of $31,915.00 at 0.0% interest, for a total payout of $31,915.00, on account of the secured claim. Debtors' Bankruptcy Schedule B also indicated that the value of the Automobile was $18,000.00.

Creditor filed its objection to the Chapter 13 Plan because, it alleged, Debtors' treatment of Creditor's claim under 11 U.S.C. § 1325(a)(5) is subject to the provisions of the "hanging paragraph" at the end of 11 U.S.C. § 1325(a) following the implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[4] Consequently,

---

1. The Agreement was by and between Debtors and Price Lincoln Mercury. Thereafter, the Agreement was assigned to Creditor.

2. Creditor's Exhibit 1.

3. Creditor's Exhibit 2.

4. The parties—and even this Court—have referred to this section as being a component of 11 U.S.C. § 1325(a)(9). More accurately, the provision referred to is the "hanging paragraph" at the end of 1325(a). As the Court in *In re Carver* noted:

 The reader immediately notices two problems. First, the provision "has no alphanumeric designation and merely dangles at the end of § 1325(a). There is no way to cite to this provision other than its proximity to other citable provisions." Dianne C. Kerns, *Cram-a-lot: The Quest Continues*, 24 Nov. Am. Bankr.Inst. J. 10, 10 (2005). In addition, the provision is "missing an operable word. The first sentence refers to 'the 910–day [period] preceding the date of the filing of the petition ...' " *Id.* Without the addition of "period," the provision makes little sense and could be read to apply only to debts of the type described that were incurred exactly 910 days—no more, no less—prior to the petition date. **These two problems are mere shadows of the larger interpretation difficulties this provision presents.** 338 B.R. 521, 523 (Bankr.S.D.Ga.2006) (emphasis added).

Creditor argues, under the "hanging paragraph," the Debtors may not "cram down" a claim for a creditor who has a purchase money security interest securing the debt when the collateral consists of a motor vehicle and the debt was incurred within 910 days prior to the filing for relief, as here. Thus, Creditor asserts, Debtors must provide for the full amount of the Creditor's claim together with interest at 12.95% in accord with *Till v. SCS Credit Corp.*[5]

Debtors subsequently amended their Chapter 13 Plan to address objections by the Chapter 13 Trustee. Debtors amended Chapter 13 Plan provided for a "cram down" value on the Automobile in the amount of $17,425.00 with interest at 10.25% for a total amount payable under the Plan of $19,907.00. The Debtors filed their Certificate Regarding Chapter 13 Plan Objections filed herein indicating that the Chapter 13 Trustee's Objection was resolved, but that the Debtors still intended to "cram down" the debt to Creditor, stating: "Debtors' amended plan provides interest on the secured claim of Onyx but crams the claim because the vehicle does not fall under the exclusion of 11 U.S.C. § 1325(a)(5)."

The Court conducted a hearing on May 16, 2007. Mr. Andoh was sworn and testified. The Court observed Mr. Andoh and considers his testimony to be credible and reliable.

## IV. *Issue*

Whether the notation on the Agreement, which indicated that the primary use for which the Automobile was purchased was for personal, family, or household purposes and the Certificate of Title in the Debtors' names only, is dispositive with respect to whether the property was "acquired for the personal use of the debtor" so as to preclude "cram down" consistent with the "hanging paragraph" at the end of 11 U.S.C. § 1325(a).

The Court concludes that, under the "totality of the circumstances" in this case, the (a) notation on the Agreement and (b) the Certificate of Title in the Debtors' individual, not business, name,[6] are not dispositive with respect to whether the property was "acquired for the personal use of the debtor" so as to preclude "cram down" consistent with the "hanging paragraph" at the end of 11 U.S.C. § 1325(a).

## V. *Discussion*

### A. "Acquired for the Personal Use of the Debtor"

The "hanging paragraph" at the end of 11 U.S.C. § 1325(a) provides:

> For the purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [7] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 20102 of title 49) *acquired for the personal use of the debtor*, or if collateral for that debt consists of any

---

5. 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). Creditor also made argument in its Objection with respect to adequate protection, insurance, and good faith. At trial, proof of insurance was tendered to the Court and the Court's ruling herein makes moot the adequate protection and good faith arguments of the Creditor.

6. The business name being Cross Limousine Service.

7. The word "period" appears to have been omitted in the original text. *See 8 Collier on Bankruptcy*, at 1325–2 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

other thing of value, if the debt was incurred during the 1–year period preceding that filing.[8]

It appears undisputed by the parties that Creditor has a purchase money security interest securing the debt that is the subject of the claim and that the date was incurred within the 910–day period preceding the date of the filing of the petition., and that the collateral for the date consists of a motor vehicle. Thus, the sole inquiry here rests on whether the Automobile was "acquired for the personal use of the debtor." Narrowing the inquiry further, Creditor argues that the focus point, here, is on the term "acquired" because (1) the express designation on the Agreement reflects that this Automobile was primarily purchased for "personal, family, or household" use, and (2) the Certificate of Title reflects that Automobile is owned by the Debtors personally.

At the evidentiary hearing on this matter, Mr. Andoh testified that the Automobile was purchased to be a limousine for his business and that Mr. Andoh did business as Cross Limousine Service. His testimony with respect to his business was supported by:

(1) Debtor's Exhibit A—a Colorado Automobile Insurance Identification Card, reflecting that the insured was Mr. Andoh d/b/a Cross Limousine Service;

(2) Debtor's Exhibit B—a change of policy endorsement reflecting the addition of the Automobile to the policy and the named insured being Mr. Andoh d/b/a Cross Limousine Service; and

(3) Debtors' Statement of Financial Affairs, paragraph 1, 18, and Debtors' Schedule D and I, which each reflect or otherwise support that the Debtor

does business as Cross Limousine Service.

In addition, it is not unimportant, here, that Mr. Andoh's native language is not English. While he appears basically fluent in English, counsel, on examination, had to clarify several questions directed to Mr. Andoh and counsel and this Court had to inquire further to make clear that certain responses given by Mr. Andoh were the responses intended.

Mr. Andoh testified that at no time did he communicate to Price Lincoln Mercury that the Automobile was to be purchased *for any other purpose other than a business purpose.* Moreover, he testified that the Automobile was not an average Lincoln Town Car, but one used for a limited market—that is, generally, this model was used as a limousine.

Creditor did not present any witnesses with respect to the transaction.

## B. Parol Evidence

 A key hurdle, here, *not raised by either party in their pleadings or at the hearing,* is whether this Court should admit parol evidence with respect to the Agreement. The Colorado Supreme Court has limited parol evidence as follows:

A court should only admit parol evidence when the contract between the parties is so ambiguous that their intent is unclear. In the absence of allegations of fraud, accident, or mistake in the formation of the contract, parol evidence may not be admitted to add to, subtract from, vary, contradict, change, or modify an unambiguous integrated contract.

. . .

[T]he parol evidence rule does not bar admission of oral representations which are not inconsistent with the terms of the final written instrument and are not of the type that one would necessarily

8. Emphasis added.

expect to be incorporated into the final agreement.[9]

In this instance, the Agreement appears unambiguous because the box is checked with respect to the primary use for which the automobile was purchased; that is "personal, family, or household." The options for the boxes to be checked were: (1) "personal, family, or household," (2) "agricultural," (3) "business," and (4) "other." Under the circumstances, here, none of the options were necessarily ambiguous. However, there is no evidence or testimony before the Court that the extension of money to purchase the Automobile was *dependent* upon any such demarcation, or that this information was provided for any other purpose other than to provide general information with respect to the Automobile. Thus, where, as here, oral representations would not be necessarily inconsistent with the terms of the final written instrument and are not of the type that would necessarily expect to be incorporated—or integral and necessary to—the final agreement, the parol evidence rule does not preclude this Court from examining extrinsic evidence in interpreting the Agreement Consequently, this Court will consider the testimony of Mr. Andoh with respect to the Agreement.

The evidence and testimony before the Court does not support that the checkmarks on the box reflecting that the Automobile was being purchased for "personal, family, or household" use were dispositive on the subject of whether the vehicle was "acquired for personal use" of the Debtors. In fact, Mr. Andoh testified that he never conveyed anything to Price Lincoln Mercury other than that this vehicle would be used for a business purchase. The Debtor was a credible witness. Based on the cumulative evidence before this Court, it appears that, if anything, this designation was either unintentional, superfluous, or a mistake.

## C. The "Totality of the Circumstances"

This District [10] has not formally dealt with the "hanging paragraph" in section 1325(a), although a number of courts around the country have.[11] As one Judge said, to the point, "[i]t is undisputed that the 'hanging paragraph' is poorly drafted." [12] In this instance, however, the Court need not delve into the difficulties presented by the "hanging paragraph" because the inquiry here stops at whether the Automobile was *acquired* for personal use.

9. *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo.1996)(*en banc)* (citations omitted).

10. Within this Circuit, however, the Honorable Janice M. Karlin, Bankruptcy Judge for the District of Kansas, has crafted three unpublished opinions on the subject at hand; that is, whether an automobile was purchased for "personal use." *In re Bolze*, 2006 WL 4491438 (Bankr.D.Kan. Aug.31, 2006); *In re Wilson*, 2006 WL 3512921 (Bankr.D.Kan. Dec.5, 2006); and *In re Lowder*, 2006 WL 1794737 (Bankr.D.Kan. June 28, 2006).

11. *See, e.g., In re Phillips*, 362 B.R. 284 (Bankr.E.D.Va.2007); *In re Trejos*, 352 B.R. 249 (Bankr.D.Nev.2006); *In re Finnegan*, 358 B.R. 644 (Bankr.M.D.Pa.2006); *In re Solis*, 356 B.R. 398 (Bankr.S.D.Tex.2006); *In re Hill*, 352 B.R. 69 (Bankr.W.D.La.2006); and *In re Johnson*, 350 B.R. 712 (Bankr.W.D.La. 2006), among others.

12. *Trejos*, 352 B.R. at 261. In *Trejos*, the Honorable Bruce A. Markell, Bankruptcy Judge for the United States Bankruptcy Court, District of Nevada, appears to be one of the first judges to have published an opinion regarding this "hanging paragraph." His decision is thorough, articulate, and scholarly. Any further additions to his analysis, by this Court, at this time, on the general features of the "hanging paragraph" would be superfluous in light of his excellent analysis.

■ In those cases ascertaining whether a vehicle was "acquired for the personal use of the debtor," it appears that the trend in the law is to look to the "totality of the circumstances." Unfortunately, there is not yet a bright-line "totality of the circumstances" test, and each Court has created its own standard—either expressly [13] or implicitly.[14]

■ While, indeed, each case will present its own set of circumstances to be included in the "totality of circumstance," this Court finds that the analysis of the "totality of the circumstances" as enunciated in *In re Hill*, is both persuasive and instructive as a *general* guide to analyzing the question of what the phrase "acquired for the personal use of the debtor." In *Hill*, the Court stated:

> Although no litmus test is afforded for deciding the business versus personal issue, the court is able to provide some guidance regarding the factors which

should be considered in evaluating the totality of the circumstances. The language of the statute provide some, although minimal, guidance. For the anti-cramdown provision to apply, the motor vehicle must have been "acquired" for the personal use of the debtor. Accordingly, the court must examine the extant circumstances not as of the petition date (as in the case of exemptions), but as of the date the vehicle was acquired. For example, if the vehicle was to be used solely and unquestionably for the debtor's personal use at the time it was acquired, then the anti-cramdown provision of the hanging paragraph would apply. Further, if the plain meaning of the statute is to be enforced as it must, this conclusion would not be affected by the debtor's subsequent use of the vehicle for solely and unquestionably business purposes.

Cases arising under the hanging paragraph, however, will not involve situations where the use of the vehicle is

---

**13.** An example of a fairly extensive list of factors to consider can be found in *In re Solis*, 356 B.R. 398, 408–11 (Bankr.S.D.Tex.2006). In this decision, the Honorable Wesley W. Steen, United States Bankruptcy Judge for the Southern District of Texas, thoroughly examines cases pre-dating his own which address the question of what the phrase "acquired for the personal use of the debtor." In so doing, he reached the following conclusions (as synthesized by this Judge):

(1) The Court must analyze of the intention of the purchaser at the time that the vehicle was acquired to determine the purpose of the acquisition.

(2) With respect to cases involving "exclusive use by a non-debtor," the provisions of the "hanging paragraph" simply do not apply.

(3) A determination of what constitutes "personal use" is whether the acquirer intended debtor's personal use to be significant and material.

(4) In ascertaining whether a certain quantitative percentage of use would be appro-

priate, the Court would determine that the "personal use" requirement of the statute is satisfied if the personal use of the debtor is significant and material, regardless of whether there is also some business use.

(5) The term "personal" would be considered under all of the facts and circumstances of the case to determine whether the vehicle was acquired with the intent of providing personal benefits for the debtor.

(6) The term "use" would be analyzed by testing "for whose benefit" the vehicle was intended to be used, not solely by considering who was intended to manipulate the controls.

(7) The term "debtor" means the person who filed the bankruptcy case, not the person who signed the loan agreement.

356 B.R. at 408–411.

**14.** *See, In re Vagi*, 351 B.R. 881 (Bankr. N.D.Ohio 2006)(the court did not formally name its approach, but it appears that the court did examine the "totality of the circumstances").

solely and unquestionably business or personal. Most, if not all, situations will be similar to the instant case where the use of the vehicle is a blend of business and personal use. If not the most important consideration, a substantial factor in considering the totality of the circumstances is whether the acquisition of the vehicle enable the debtor to make a significant contribution to the gross income of the family unit. If it did, then this court concludes that the vehicle was not "acquired for the personal use of the debtor." Again, the court believes the test must be applied as of the date of acquisition, not the date of the bankruptcy filing.[15]

The Court went on to say:

It has been argued that *any* personal use of the vehicle by a debtor triggers the anti-cramdown provision of the hanging paragraph. While one might conjecture that the "parties pushing the passage of the Act [and the hanging paragraph in particular] had their own agenda," the statute does not compel a finding that Congressional intent was to prohibit bifurcation if the vehicle was exposed to *any* personal use. If that were the case, the escape mechanism of the hanging paragraph, *i.e.,* cramdown is permitted where the vehicle was not acquired for the personal use of the debtor, would effectively be written out of the law. And we must assume that Congress didn't intend that absurd result.[16]

 In this case, the testimony of Mr. Andoh and the evidence presented reflect that the Automobile was *acquired* for a business purpose. At the time of acquisition, this Automobile was intended to be used for Mr. Andoh's limousine service. It was *and is* the *sole* means by which he makes a living. Consequently, the "hanging paragraph" in 11 U.S.C. § 1325(a) does not apply here.[17]

## VI. *Order*

IT IS THEREFORE ORDERED that the Creditor's Objection to Confirmation of the Debtors' Chapter 13 Plan dated March 8, 2007 (Docket # 16) is OVERRULED and the Debtors' Amended Chapter 13 Plan is CONFIRMED.

---

15. *Hill,* 352 B.R. at 72 (footnote omitted) (emphasis in original). At least one court noted that *Hill* also adopts a *per se* test. *In re Solis,* 356 B.R. 398, 408 (Bankr.S.D.Tex. 2006). That is, *Hill* seems to require that a court first determine whether the vehicle enables the debtor to make a significant contribution to the gross income of the family unit. If the answer to that question is "no," then, and only then, would the Court go on to look at all the facts and circumstances.

16. *Id.* at 73.

17. The Court notes that the interest rate was reduced to 10.25% from the contract rate of 12.95% by way of the Debtors' amended Chapter 13 Plan. The parties did not address whether this rate of interest was appropriate under *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

While the original Objection by Creditor did address *Till,* it was in the context of the original Plan filed by the Debtors, wherein the Debtors provided for 0% interest on the claim. The focus of the parties at the hearing on this matter was the amount of the claim and whether it could be "crammed down." Under *Till,* the "cram down" rate of interest requires an adjustment of the prime national interest rate based on the risk of nonpayment. 541 U.S. at 477–91, 124 S.Ct. at 1960–68. The size of risk adjustment depending on such factors as the circumstances of the estate, the nature of the security, and duration and feasibility of the reorganization plan. *Id.* In the absence of evidence to the contrary, the Court concludes that the rate of interest, 10.25%, is an appropriate rate of interest in this instance.